**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0894-22

IN THE MATTER OF LANCE
BENNETTE, DEPARTMENT
OF TRANSPORTATION.

_____

Submitted April 16, 2024 – Decided May 1, 2024

Before Judges Smith and Perez Friscia.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-1628.

Destribats Campbell Staub & Schroth, LLC, attorneys for appellant Lance Bennette (Raymond C. Staub, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Transportation (Sookie Bae-Park, Assistant Attorney General, of counsel; Dennis J. Mikolay II, Deputy Attorney General, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Brian D. Ragunan, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Lance Bennette appeals from the October 12, 2022 final administrative decision (FAD) of the New Jersey Civil Service Commission (Commission) upholding the New Jersey Department of Transportation's (NJDOT) major disciplinary action of a six-working day suspension and payment of restitution for violations of N.J.S.A. 4A:2-2.3.  We affirm.

I.

Bennette was a construction and maintenance technician for the NJDOT, which required a valid driver's license.  As a technician, he was entitled to submit work travel expense invoices to the NJDOT for reimbursement of eligible vehicle mileage accrued.  The invoices required a signed certification stating "I certify that the above expenses are correct in all respects. . . . I also CERTIFY that on the date(s) when the above items of expense were incurred, when using my personal vehicle, I possessed a valid driver['s] license."

In accordance with the NJDOT's "policy/procedure" manual, an employee was required to "[i]mmediately inform [his or her] supervisor of driver's license suspension."  Further, "[d]isciplinary action must be requested for an employee who fail[ed] to notify his/her supervisor of the loss of driving privileges."

On February 7, 2020, the New Jersey Motor Vehicle Commission (MVC) notified Bennette his driving and registration privileges were scheduled for

2

suspension on March 2 because he "failed to present acceptable proof of his legal name, date of birth, valid address, social security number, [and] legal presence in this country." The MVC previously issued a suspension notice on November 20, 2019, notifying Bennette his "New Jersey driving and registration privileges [we]re scheduled to be suspended as of [December 14, 2019] indefinitely." In December 2019, Bennette had provided proof of his birth certificate, social security card, and residence to the MVC in person, obtaining a valid license. After receiving the February 2020 notice of suspension, Bennette's attorney, by letter dated February 24, 2020, requested a hearing and a stay of the scheduled suspension. Three days later, the attorney additionally requested Bennette's "[identification] [s]uspension" hearing to occur on the same date as Bennette's "passenger endorsement" suspension hearing.

On March 2, 2020, the MVC advised a hearing was scheduled on April 14 but did not stay the March 2 suspension. On March 13, the MVC advised Bennette his basic driving privileges: were "indefinitely" suspended as of March 2; could be restored "with acceptable proof"; and reinstatement required a "restoration fee." On June 16, Bennette paid the restoration fee. On June 22, Bennette emailed the MVC for assistance with his "[s]uspension/[r]estoration issues." His driving privileges remained suspended from March 2 until July 12.

A-0894-22

Bennette failed to advise his supervisor of his license suspension and continued driving his vehicle for work. Between March and July 2020, he certified he possessed a valid driver's license in multiple travel expense invoices for reimbursement. In July, the NJDOT's routine audit of employees' driving privileges revealed Bennette's suspension. During the NJDOT's investigation into Bennette's invoices, Bennette admitted to investigator Brian Harshman he was aware of the suspension but believed it was in error.

On March 23, 2021, Bennette was served with a preliminary notice of disciplinary action seeking a six-working day suspension for violating the "NJDOT Guidelines for Employee Conduct and Discipline." Specifically, Bennette was charged with: failure to report the suspension of driving privileges, N.J.A.C. 4A:2-2.3(a)(12); falsification, N.J.A.C. 4A:2-2.3(a)(12); and conduct unbecoming of a public employee, N.J.A.C. 4A:2-2.3(a)(6). He did not request an internal disciplinary hearing. On April 15, 2021, in its final notice of disciplinary action, the NJDOT issued a six-working day suspension beginning on May 14, 2021. Additionally, the NJDOT required $1,307.95 in restitution for the invoices paid. After Bennette challenged the final notice, the action was transferred to the Office of Administrative Law.

4

On September 12, 2022, after a two-day hearing during which five witnesses testified, an Administrative Law Judge (ALJ) issued a twenty-five-page initial decision upholding the suspension. The ALJ found Bennette's testimony that he was unaware of his license suspension in March 2020 inconsistent and lacked credibility, and he knew "that his license was suspended." Next, the ALJ found credible Harshman's testimony that Bennette admitted knowledge of the March 2020 order of suspension. She found the NJDOT had proven by a preponderance of the evidence that Bennette: failed to report his driver's license suspension; falsified travel expense invoices by certifying to possessing a valid driver's license; and engaged in conduct unbecoming of a public employee.

In considering the NJDOT penalty and Bennette's credibility, the ALJ questioned why Bennette did not report his license suspension to his supervisor if he had first learned about it in June 2020. Further, in concluding the disciplinary actions were appropriate, the ALJ found Bennette's lack of candor was "an egregious aggravating factor." The Commission then issued an FAD adopting the ALJ's findings of fact and conclusions of law and dismissing Bennette's appeal.

Before us, Bennette argues the Commission erred because it failed to: weigh the COVID-19-related MVC closures and the impact on his suspension; and acknowledge counsel's correspondence to the MVC requesting a stay of the suspension.

II.

Our scope of review of a FAD is limited. In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020); see also Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). An appellate court may only reverse an agency's decision where it finds that the decision is "arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record as a whole." See Azzaro v. Bd. of Educ. of Trenton, 477 N.J. Super. 427, 436 (App. Div. 2023) (quoting G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259-60 (App. Div. 2012)). "While we must defer to the agency's expertise, we need not surrender to it." In re Thomas Orban/Square Props., LLC, 461 N.J. Super. 57, 72 (App. Div. 2019) (quoting N.J. Chapter of Nat'l Ass'n of Indus. & Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990)). The party challenging the FAD has the burden to demonstrate grounds for reversal. See Lavezzi v. State, 219 N.J. 163, 171 (2014).

6

In determining if an agency's decision is arbitrary, capricious or unreasonable, we examine "(1) whether the agency's action violates express or implied legislative policies," (2) whether there is substantial evidence in the record to support the agency's decision, and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi, 219 N.J. at 171 (quoting City of Newark v. Nat. Res. Council in the Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). We "may not substitute [our] own judgment for the agency's even though [we] might have reached a different result." In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). An appellate court does not automatically accept an agency's interpretation of a statute or a regulation, and reviews strictly

legal questions de novo.  See Bowser v. Bd. of Trs., Police & Fireman's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

## III.

We reject Bennette's argument that the COVID-19-related emergency closure of the MVC "effectively caused his license and driving privileges to be erroneously suspended," leading to his discipline.  The record demonstrates the MVC's February 7, 2020 letter noticed Bennett of the March 2, 2020 scheduled suspension of his driving and registration privileges.  Bennette specifically retained counsel, who requested a hearing scheduled for April 14.  On March 13, the MVC advised Bennette his basic driving privileges were "indefinitely" suspended as of March 2.  Notably, Bennette had no contraindication that a stay or reinstatement of his privileges occurred.  He had previous knowledge an issue existed with his driving privileges because he received the November 2019 notice of his license suspension, which he addressed.  It was incumbent on Bennette as a public employee to report his driving privileges suspension regardless of the COVID-19-related cancelation of his hearing due to the MVC's closure.

Bennette's candid admission that he knew his license was suspended, but believed it was in error, does not negate the violations.  Notably, his June 22

A-0894-22

email to the MVC seeking to "figure out how to overturn a license suspension that went out on Jan[uary] 2020 for an age verification" further demonstrates his knowledge. Moreover, Bennette admitted to Harshman he was aware of the suspension. We conclude that while the COVID-19 pandemic caused the MVC's closure, clearly making restoration more difficult, it did not obviate Bennette's requirement to report his license suspension to his superior, maintain accuracy in his certifications, and demonstrate conduct becoming of a public employee. The Commission's decision, which accepted and adopted the ALJ's determination to uphold Bennette's violations and the penalties, is sufficiently supported by the record and consistent with the applicable law.

We are unpersuaded by Bennette's argument that the Commission did not consider his counsel's correspondence with the MVC. In adopting the ALJ's initial decision, the Commission determined counsel had sent two letters requesting a hearing and in one requested a stay. We discern no error in the Commission's decision to accord no further weight to counsel's letters, as they were immaterial to the determination of Bennette's charges under N.J.A.C. 4A:2-2.3. The record amply supports Bennette's knowledge of his driver's license suspension, failure to report the suspension, wrongful submission of certified invoices attesting to a valid license, and unbecoming conduct of a

9

public employee. Even accepting his belief that the suspension was in error, Bennette was required to follow the NJDOT reporting requirements.

To the extent that we have not addressed Bennette's remaining arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0894-22